## APPEALS OF BRANDEIS INVESTMENT CO. AND J. L. BRANDEIS & SONS.

Docket Nos. 1545 and 1546.     Submitted December 1, 1925.     Decided March 31, 1926.

Two corporations *held* to be affiliated.

*Albert L. Hopkins, Esq., J. C. Halls, Esq., John M. Gilchrist, C. P. A.,* and *Aloysius Congdon, C. P. A.,* for the taxpayers.
*Percy S. Crewe, Esq.,* for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

These appeals are from deficiencies in income and profits taxes in the respective amounts of $8,275.29 and $53,922.17 for the fiscal year ended January 31, 1920. The only issue involved is the right of the taxpayers to file consolidated returns. On stipulation between counsel, the two appeals were ordered consolidated for hearing and decision.

### FINDINGS OF FACT.

1. Jonas L. Brandeis and his sons Arthur D. and Emil engaged as copartners in a merchandising business in Omaha, Nebr., about 1883. Later on, when another son, H. Hugo Brandeis, became of age, he was admitted to the firm. In 1901 the business was incorporated under the laws of Nebraska with the name of J. L. Brandeis & Sons. This corporation is one of the taxpayers and will hereinafter be referred to as the store company. The capital stock was $350,000, divided into 3,500 shares of a par value of $100 each. All of the stock was taken by the father and his three sons. Jonas L. Brandeis died January 23, 1903, leaving his shares of stock to the three sons, the respective holdings of whom then became as follows: Arthur D. Brandeis, 1,333⅓ shares; Emil Brandeis, 1,333⅓ shares; and H. Hugo Brandeis, 833⅓ shares. Emil Brandeis died April 15, 1912, leaving his shares to his brother Arthur D. for life, and then to go to Arthur's son, J. L. Ervine Brandeis. H. Hugo

Brandeis died July 21, 1912, leaving a life interest in his shares to his wife, Lyela, and the remainder to pass to his male heirs at her death. Shortly after the death of H. Hugo, Arthur D. Brandeis purchased the life interest of Lyela in the 833⅓ shares. Lyela was alive during all of the fiscal year involved. Arthur D. Brandeis died June 10, 1916. His life estate in the 1,333⅓ shares received from his brother Emil then passed to his son, J. L. Ervine Brandeis. By his will Arthur D. Brandeis provided, among other things, an annuity of $6,000 to his sister, Sarah B. Cohn, to be paid to her during her life; an annuity of $50,000 to his wife, Zerlina Brandeis, now Mrs. Joseph Helfman, for her life; an annuity of $25,000 to his daughter, Ruth B. Stern, for life; and an annuity of $25,000 to his daughter, Leola Brandeis, for life. Subject to these bequests, he devised and bequeathed his entire estate to J. L. Ervine Brandeis, George Brandeis and John L. Kennedy, as trustees, conditioned upon the transfer of all the trust property to J. L. Ervine Brandeis upon his reaching the age of 29 years. This trust had not expired during the taxable year involved.

The trust thus controlled 2,166⅔ shares of the 3,500 shares of the store company, and the annuities of Sarah B. Cohn, Lyela Brandeis, Ruth B. Stern, and Leola Brandeis became chiefly dependent upon the earnings of the store company.

2. The taxpayer, Brandeis Investment Co., hereinafter called the investment company, was incorporated under the laws of Nebraska in 1917, with an authorized capital stock of $4,000,000; $2,000,000 common and $2,000,000 preferred, both of which classes of stock had voting rights. This company was organized for the purpose of taking over and consolidating into one ownership the business properties which were owned by the store company and various other corporations which had been organized by the Brandeis brothers. With the exception of the property occupied by the store company, the real estate and leaseholds consolidated into the ownership of the investment company had been acquired, improved, and rented with the definite purpose of the Brandeis father and sons to create a high-class business center that would improve the location of, and insure business for, the store, which had been established in a section of the city apart from the then retail shopping district. Among the enterprises developed for this purpose were subways under the streets adjacent to the main store building, a theatre, two moving-picture theatres, store and office buildings, and structures which would house and promote trade and direct custom to the store, which was a general department store with restaurant and amusement facilities. On the organization of the investment company, all of the properties were

appraised and its preferred and common stock were issued to the holders of stock of like character in the predecessor corporations, share for share, and the store company received stock of both classes for its real property. The investment company became the owner of the real property of all the corporations and the holding company. The store company became its tenant, paying, during the taxable year in question, $275,000 for the main store building and some additional space, and paying no rent for other space used by it. This rental was arbitrarily fixed at this amount in order to provide an amount only sufficient for the investment company to pay carrying charges, interest on its mortgage indebtedness, dividends on the preferred stock, and a low dividend on the common stock. The rent charged was considerably less than the fair rental values of the property occupied, because the shareholders in the two companies desired to see the large earnings come from the store company in order that the annuities under the trust might be met without impairing the efficiency of that company or affecting its credit. The store company was to be the money-making concern. While the investment company had other tenants, the store company was the principal one. The credit of the investment company was utilized to borrow money for purposes of the store as well as for itself.

3. When the investment company was organized, the shares of preferred stock other than those issued to J. L. Ervine Brandeis and the trustees of the estate of Arthur D. Brandeis, the largest stockholder in both companies, and to the store company, the largest stockholder in the investment company, were indorsed by J. L. Ervine Brandeis and the store company, with the following guaranty:

> Dividends on the Stock represented by this Certificate are cumulative and are hereby guaranteed at 6% per annum, payable January 1 and July 1. The undersigned reserves the right to purchase, and agrees to purchase, the Stock at par, on any dividend date, on demand, on or after July first, 19—.

The dates when the right to purchase became effective were varied in different certificates. The object of the guaranty was to keep the preferred stock under the control of the store company.

4. The holders and holdings of stock in the two companies at the beginning and end of the taxable year involved in these appeals were as follows:

*February 1, 1919.*

| Stockholders. | Store company. Common. | Investment company. Pre-ferred. | Investment company. Common. |
|---|---|---|---|
| Trustees of Arthur D. Brandeis Estate | 2,166⅔ | 687 | 4,804⅓ |
| J. L. Ervine Brandeis, vice president of both companies | 1,333⅓ | 1,078 | 3,921⅓ |
| J. L. Brandeis & Sons, taxpayer | | 902 | 11,274⅓ |
| George Brandeis, president of both companies | | 1,000 | |
| Lyela B. Turner, widow of H. H. Brandeis | | 3,564 | |
| Mrs. Joseph Helfman, widow of A. D. Brandeis | | 240 | |
| Leola Brandeis, daughter of A. D. Brandeis | | 400 | |
| G. H. Malchien, secretary and treasurer of both companies | | 400 | |
| Sarah B. Cohn, sister of A. D. Brandeis | | 1,110 | |
| H. J. McCarthy, employee of store company | | 150 | |
| Loyal Cohn, nephew of A. D. Brandeis, son of Sarah B. Cohn | | 210 | |
| Carrie Seligman, relative of Brandeis family | | 100 | |
| Emma Marcus, relative of Brandeis family | | 70 | |
| Estate of S. Steinfeld | | 50 | |
| Walter Cohn, nephew of A. D. Brandeis, son of Sarah B. Cohn | | 40 | |
| Ben W. Edelman, father of Lyela Brandeis Turner | | 38 | |
| Julia Friend, relative of Brandeis family | | 10 | |
| Anna Bresman, cashier of store company | | 5 | |
| W. C. McKnight, employee of store company | | 10 | |
| N. Kenny, relative of Brandeis family | | 11 | |
| Lottie Teweles, relative of Brandeis family | | 5 | |
| Carrie Teweles, relative of Brandeis family | | 5 | |
| Clara Teweles, relative of Brandeis family | | 5 | |
| Rose Teweles, relative of Brandeis family | | 5 | |
| Helen Gwin | | 25 | |
| Louise Brandeis, relative of Brandeis family | | 20 | |
| | 3,500 | 10,140 | 20,000 |

*January 31, 1920*

| Stockholders. | Store company. Common. | Investment company. Pre-ferred. | Investment company. Common. |
|---|---|---|---|
| Trustees of Arthur D. Brandeis Estate | 2,066⅔ | 887 | 4,804⅓ |
| J. L. Ervine Brandeis, vice president of both companies | 633⅓ | 1,078 | 3,921⅓ |
| George Brandeis, president of both companies | 700 | 1,000 | |
| Karl N. Louis, employee of store company and brother-in-law of George Brandeis | 60 | | |
| Thomas F. Quinlan, employee of store company | 40 | | |
| J. L. Brandeis & Sons, taxpayer | | 1,122 | 11,274⅓ |
| Lyela B. Turner, widow of H. H. Brandeis | | 3,564 | |
| Mrs. Joseph Helfman, widow of A. D. Brandeis | | 240 | |
| Sarah B. Cohn, sister of A. D. Brandeis | | 1,110 | |
| H. J. McCarthy, employee of store company | | 150 | |
| Carrie Seligman, relative of Brandeis family | | 100 | |
| Emma Marcus, relative of Brandeis family | | 70 | |
| Estate of S. Steinfeld | | 50 | |
| Walter Cohn, nephew of A. D. Brandeis, son of Sarah B. Cohn | | 40 | |
| Ben W. Edelman, father of Lyela Brandeis Turner | | 38 | |
| Anna Bresman, cashier of store company | | 5 | |
| W. C. McKnight, employee of store company | | 10 | |
| N. Kenny, relative of Brandeis family | | 11 | |
| Lottie Teweles, relative of Brandeis family | | 5 | |
| Clara Teweles, relative of Brandeis family | | 5 | |
| Carrie Teweles, relative of Brandeis family | | 5 | |
| Rose Teweles, relative of Brandeis family | | 5 | |
| Leola Brandeis, daughter of A. D. Brandeis | | 400 | |
| Helen Gwin | | 25 | |
| Louise Brandeis, relative of Brandeis family | | 20 | |
| | 3,500 | 9,940 | 20,000 |

5. At the stockholders' meeting of the investment company held on January 21, 1919, the stock represented and voted was as follows:

902 shares preferred and 11,274⅓ shares common of the store company, by George H. Malchien, treasurer; 687 shares preferred and 4,804⅓ shares common of trustees of Arthur D. Brandeis estate, by John L. Kennedy, trustee; 1,078 shares preferred and 3,921⅓ shares common of J. L. Ervine Brandeis, by George H. Malchien, proxy; 1,000 shares preferred of George Brandeis, by Karl N. Louis, proxy; 400 shares preferred of George H. Malchien, in person, and 1,110 shares preferred of Sarah B. Cohn, in person. The total shares represented and voted was 25,167.

At the meeting on January 20, 1920, the stock was represented and voted as follows: 1,122 shares preferred and 11,274⅓ shares common of the store company, by George Brandeis, president; 887 shares preferred and 4,804⅓ shares of common of trustees of Arthur D. Brandeis estate, by George Brandeis and John. L. Kennedy, trustees; 1,078 shares preferred and 3,921⅓ shares common of J. L. Ervine Brandeis, by George Brandeis, proxy; 1,000 shares preferred of George Brandeis, in person; 3,564 shares preferred of Lyela Brandeis Turner, by Howard H. Baldridge, proxy; 240 shares of Mrs. Joseph Helfman, 400 shares of Leola Brandeis, 20 shares of Louise Brandeis, 40 shares of Walter Cohn, 5 shares of Anna Bresman, 38 shares of Ben W. Edelman, 25 shares of Helen Gwin, 11 shares of N. Kenny, 70 shares of Emma Marcus, 50 shares of estate of S. Steinfeld, 100 shares of Carrie Seligman, 5 shares of Lottie Teweles, 5 shares of Clara Teweles, 5 shares of Carrie Teweles, and 5 shares of Rose Teweles, all preferred, by George Brandeis, proxy. The total number of shares represented and voted was 28,640.

6. The directors elected by the store company in January, 1919, were George Brandeis, J. L. Ervine Brandeis, G. H. Malchien and John L. Kennedy. In January of 1920, Malchien was dropped because he had retired from the store and George Brandeis, J. L. Ervine Brandeis, and Kennedy were elected directors. For 1919, George Brandeis was elected president, J. L. Ervine Brandeis, vice president, and Malchien, secretary and treasurer. At the 1920 election the only change was the election of E. J. Malone to take the place of Malchien as secretary and treasurer.

7. The directors elected by the investment company in January, 1919, were George Brandeis, J. L. Ervine Brandeis, John L. Kennedy, George H. Malchien, Sarah B. Cohn, and Lyela Brandeis Turner. The directors elected in January, 1920, were the same, except that Karl N. Louis was substituted for Malchien, who had withdrawn. The officers elected for both years were the same as those elected for the same years by the store company. Sarah B. Cohn and Lyela Brandeis Turner, though notified of directors' meetings, never appeared at such meetings unless especially requested to do so for the purpose of making a quorum.

8. The two taxpayers occupied the same offices in the building used by the store company. The salaries of the executive officers of both were paid by the store company, except that the president drew an annual salary of $100,000 from the store company and $4,000 from the investment company.

9. John L. Kennedy, one of the trustees of the Arthur D. Brandeis estate and attorney for the taxpayers, made a practice of preparing the minutes for the stockholders' and directors' meetings of both companies prior to the times of such meetings. This was done after consultation with George Brandeis and, when present, J. L. Ervine Brandeis, as to the matters to be considered and acted upon at the meetings. These three, as officers, trustees, and individuals, controlled all of the stock of the store company and approximately 80 per cent of the stock of the investment company, and, by reason of family relationships, dependency of some of the preferred stockholders in the investment company on the earnings of the store company for their annuities and the consent and proxies of the other stockholders, controlled substantially all of the remaining stock of the investment company. During the entire period of existence of the two companies, action upon every proposition submitted at the directors' and stockholders' meetings thereof had been unanimous.

10. The management and direction of the two companies rested on George Brandeis, in whom all the stockholders placed complete confidence and in whom was placed the entire control of the business affairs of both. He came into the management of the store business under contract made between the store company and him during the life of Arthur D. Brandeis and had been continued in that capacity under contract and election as a result of his efficiency and the confidence which all of the stockholders reposed in him.

OPINION.

GRAUPNER: This appeal results from the refusal of the Commissioner to affiliate two corporations, which have been developed as the result of family ambition and design to establish business preeminence and family prestige in a community, and which have been operated with remarkable consistency of purpose to accomplish those ends. The family solidarity, the mutual confidences reposed, the consistent cooperation throughout the years, and the concentration on accomplishment, as disclosed by the testimony, have produced a unity of purpose which has resulted in the two companies operating in common interest.

The investment company was organized to hold and operate the real property acquired for the purpose of developing a business dis-

trict around and housing the merchandising concern. It has been the expressed intent of all of its stockholders that the store company should carry on the department store around which the family pride and ambition centered and on which all of the stockholders in the store company and the holders of over 86 per cent of the stock in the investment company depended for their incomes.

The entire circumstances disclosed by the record show that the realty company was the child of the store company, conceived for its purposes, developed for its convenience, and dominated by its necessities. While it is true that there are stockholders in the investment company who hold no stock in the store company, yet the store company and its closely knit stockholders own over 80 per cent of the stock in the investment company, and three other stockholders, who are dependent for their income on the earnings of the store company, own over 6 per cent. These three stockholders, by interest, confidence, action, proxies, and expressed wishes, have left the voting of their stock and the control of the investment company in the hands of the stockholders and officers of the store company. Lyela Brandeis Turner, who owned 3,564 shares of the preferred stock in the investment company, as evidenced by her requests and actions, placed entire confidence in George Brandeis and voted as a director, and had her stock in that company voted, in accordance with his suggestions. The record shows that during the years of existence of the two companies, there has never been a dissenting vote cast at the stockholders' or directors' meetings of either. It further shows that during the same period the officers of the store company have dictated the operations of the investment company and that none of the stockholders of the latter have ever protested this control.

Considering all of the circumstances disclosed in this appeal, we are of the opinion that the two companies were affiliated within the taxable year involved, and that they are entitled to file a consolidated return.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*